UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

$9,781,900.00 OF FUNDS IN THE NAME OF FALCON STRATEGIC SOLUTIONS;

$582,000.00 OF FUNDS IN THE NAME OF FALCON STRATEGIC SOLUTIONS;

$3,886,973.41 OF FUNDS IN THE NAME OF FINROST LIMITED;

$15,179,860.00 OF FUNDS IN THE NAME OF FINROST LIMITED; and

$4,549,719.80 OF FUNDS IN THE NAME OF VECTURA TRANS,

Defendants *In Rem*.

Civil Action No. 22-0898

**UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW, Plaintiff the United States of America, by and through the United States Attorney for the District of Columbia, and brings this Verified Complaint for Forfeiture *In Rem* against the defendant properties, namely:

- $9,781,900.00 of funds in the name of Falcon Strategic Solutions ("Falcon") sent by Customer 1 held at U.S. Bank 1 ("Target Funds 1");
- $582,000.00 of funds in the name of Falcon sent by Customer 2 held at U.S. Bank 2 ("Target Funds 2");

- $3,886,973.41[1] of funds in the name of Finrost Limited ("Finrost") sent by Customer 3 held at U.S. Bank 1 ("Target Funds 3");
- $15,179,860.00 of funds in the name of Finrost sent by Customer 4 held at U.S. Bank 2 ("Target Funds 4");
- $4,549,719.80 of funds in the name of Vectura Trans ("Vectura") sent by Customer 3 held at U.S. Bank 1 ("Target Funds 5"); and (collectively, the "Defendant Funds");[2] and alleges as follows.

**NATURE OF ACTION AND THE DEFENDANT IN REM**

1. This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") of the use of United States correspondent accounts to transfer funds through a network that circumvented U.S. sanctions. After being designated by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), three arms-trading companies, Partizan Tech DOO ("Partizan Tech"), Tehnoglobal Systems DOO Beograd ("Tehnoglobal"), and Grawit Limited (collectively, the "Designated Entities"), used a series of front companies, including Falcon, Finrost, and Vectura, to continue conducting correspondent banking transactions through the U.S. financial system, in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705 *et seq.*, the federal money laundering statute, 18 U.S.C. § 1956, and the conspiracy statute, 18 U.S.C. § 371.

---

1 The $3,886,973.41 in the name of Finrost held at U.S. Bank 1, namely Target Funds 3, is comprised of three payments made over a three-month period. The specific amounts sent were: $1,506,484.31 sent on September 4, 2018, $1,829,240.00 sent on September 20, 2018, and $551,249.10 sent on November 29, 2018. All three payments have the same originator and beneficiary and passed through the same U.S. correspondent bank. As such, they have been consolidated here into Target Funds 3.

2 The Defendant Funds were blocked pursuant to Executive Order 13,818, described further below.

2. The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in and traceable to money laundering activity, in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h). The Defendant Funds are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of IEEPA, codified at 50 U.S.C. § 1701, *et seq*.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

4. Venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and (b)(2) and 28 U.S.C. Section 1395(c). The Defendant Funds are currently frozen in bank accounts located in the United States, specifically, U.S. Bank 1 and U.S. Bank 2. Further, individuals and entities named herein are Specially Designated Nationals ("SDNs"), who failed to seek the requisite licenses from OFAC, located in Washington, D.C.

## STATUTORY FRAMEWORK

### I. IEEPA and the Related Executive Order Regarding Serious Human Rights Abuses or Corruption

5. This civil forfeiture action relates to violations of the regulations and Executive Orders issued pursuant to IEEPA. IEEPA grants the President authority, as outlined in 50 U.S.C. § 1702, to deal with threats to the national security, foreign policy, or economy of the United States that originate in whole or in substantial part outside the United States. IEEPA authorizes the President to declare a national emergency with respect to such a threat, and IEEPA prescribes penalties for violations thereunder. *See* 50 U.S.C. § 1705(a).

6. On December 20, 2017, the President issued Executive Order 13,818, which declared a national emergency with respect to serious human rights abuse and corruption around the world, and pursuant to his authority under IEEPA, took steps to address those threats to the national security, foreign policy, and economy of the United States. Specifically, the Order provides that all property and interests in property, of those individuals and entities designated by Executive Order 13,818, which are in the United States, come into the United States, or come within the possession of a United States person, are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in by any persons designated by Executive Order 13,818. Exec. Order. No. 13,818, 82 Fed. Reg. 60,839-60,843 (Dec. 21, 2017). The President extended this national emergency on December 16, 2021, and Executive Order 13,818 remains in effect.

7. With this Order, pursuant to IEEPA, any transaction conducted within the United States which evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in Executive Order 13,818, is prohibited. *See generally* 50 U.S.C. § 1705(a).

## II. <u>Money Laundering Statute</u>

8. Under 18 U.S.C. § 1956(a)(2)(A), it is a violation to transport, transmit, or transfer, or to attempt to transport, transmit, or transfer a monetary instrument or funds to, among others, a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity.

9. Pursuant to 18 U.S.C. § 1956(c)(7)(D), the term "specified unlawful activity," includes violations of the penalty provisions of IEEPA.

10. Further, pursuant to 18 U.S.C. § 1956(h), it is unlawful to conspire to violate Section 1956.

**III. The Forfeiture Statute**

11. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property is subject to forfeiture. Forfeiture pursuant to this statute applies to more than just the proceeds of a specific crime. Forfeiture sought in connection with a violation of the money laundering statute applies to all property "involved in" the crime, which can include all funds commingled with money derived from illicit sources.

12. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of IEEPA, or a conspiracy to violate IEEPA, is subject to forfeiture.

**FACTS GIVING RISE TO FORFEITURE**

**I. Relevant Individuals, Entities, and Background**

13. Partizan Tech, Tehnoglobal, and Grawit Limited are arms trading companies that are owned or controlled by an individual who was designated by Executive Order 13,818. For this reason, OFAC designated these companies pursuant to that Executive Order on December 21, 2017. 82 Fed. Reg. 61,666 (Dec. 28, 2017).[3] Partizan Tech and Tehnoglobal are organized or located Serbia, while Grawit Limited is organized or located in Cyprus.

14. Pursuant to the December 21, 2017, OFAC designation, U.S. persons were restricted from engaging with the Designated Entities in any U.S.-dollar transactions that occurred in whole or in part in the United States, and from exporting or supplying any good, technology, or services

[3] In the 2017 designation, Tehnoglobal was improperly spelled, "Technoglobal" with enough other identifiers to tie to the correct company. In the subsequent 2019 designation, discussed below, OFAC added the correct spelling of the company, "Tehnoglobal" to the SDN List.

from the United States to those companies. *See* Notice of OFAC Sanctions Actions, 82 Fed. Reg. 61,665 (Dec. 28, 2017).

15. Falcon was established on or about December 29, 2017, and was utilized to receive payments on behalf of Partizan Tech and Tehnoglobal after they were designated by OFAC. Falcon is organized or located in Serbia.

16. Finrost was created in 2016, but remained largely dormant until it began transacting through the United States on behalf of the Designated Entities in or about January 2018. Finrost is organized or located in Cyprus.

17. Vectura provided services to Partizan Tech and other sanctioned individuals or entities after their designation in 2017. Vectura is organized or located in Serbia.

18. Following the 2017 designations, U.S. banks began to block wire transfers associated with Partizan Tech, Tehnoglobal, and Grawit Limited. The Defendant Funds arise from these blocked wire transfers. As further described below, Defendant Funds are funds associated with wire transfers to Falcon, Finrost, and Vectura, as these companies materially supported and/or or acted on behalf of the Designated Entities in furtherance of their business activities.

19. On December 9, 2019, Falcon, Finrost, and Vectura, were themselves designated by OFAC pursuant to Executive Order 13,818 for their activities supporting designated persons or entities. *See* Notice of OFAC Sanctions Actions, 84 Fed. Reg. 68,014, 68,015 (Dec. 12, 2019).

## II. Target Funds 1 and Target Funds 2: Falcon Strategic Solutions as an Intermediary for Partizan Tech and Tehnoglobal

20. Target Funds 1 and Target Funds 2 involve wire transfers that were made to Falcon on behalf of Partizan Tech and Tehnoglobal, respectively. As mentioned above, Partizan Tech and Tehnoglobal are arms trading companies that are organized or located in Serbia and were designated by OFAC pursuant to Executive Order 13,818 in 2017. After Partizan Tech and

Tehnoglobal were designated by OFAC, they began to instruct customers to send payments to Falcon, as further described below. Two such payments comprise Target Funds 1 and Target Funds 2.

21. OFAC designated Falcon along with its director Esad Kapidzic ("Kapidzic") in 2019 for their support of designated persons or entities.

**A. Target Funds 1**

22. Partizan Tech's reliance on Falcon following its 2017 designation is evidenced by the transaction with Customer 1 described below.

23. Search warrant returns showed that on or about September 12, 2016, before Partizan Tech's designation, the company signed a contract with the reference number, M/86/437/31/AM, with Customer 1, requiring Customer 1 to pay $83,320,000 to Partizan Tech for the sale of ammunition and weapons.

24. Thereafter, subpoena returns from U.S. banks that process international wires revealed that Customer 1 made three initial payments to Partizan Tech arising from this contract, amounting to $29,016,206. All three of these initial wire payments were completed before OFAC's 2017 designation of Partizan Tech.

25. Following Partizan Tech's designation, however, Customer 1 still owed money on the 2016 contract. As such, Partizan Tech reached out to Customer 1 to redirect a payment to Falcon using the same reference number M/86/437/31/AM. This instruction was signed by Zoran Petrovic ("Petrovic"), who was designated in 2019 as a managing director and principal of Partizan Tech.

26. Customer 1 responded to this instruction, inquiring about the relationship between Partizan Tech and Falcon. Per the search warrant returns, Petrovic responded in a document using Partizan Tech letterhead, stating:

> With this letter we hereby inform you that company "Falcon Strategic Solutions doo" with address: Todoroa Manojlovica 28, 11000 Belgrade, R. Serbia, legally operates under "Partizan tech doo" holding as financial operator and its [sic] fully authorized to receive the funds on behalf of our company, as indicated in our Statement issued on the 20th of February 2018.

27. Customer 1 then made a fourth payment on this contract, sending $9,781,900.00 to Falcon on April 5, 2018. Customer 1 sent this payment through a U.S. correspondent bank account which blocked the funds. The blocked funds Customer 1 attempted to send to Partizan Tech through Falcon, comprises Target Funds 1. Target Funds 1 remain blocked at U.S. Bank 1.

28. Following the U.S. bank's proactive blocking of Target Funds 1, Customer 1 reached out to Partizan Tech on May 17, 2019, to inform it that payment on this contract, M/86/437/31/AM, had not been successful.

29. That same day, Partizan Tech responded to Customer 1, providing, once again on Partizan Tech letterhead, an additional bank account of its factory supplier, to which to send the funds.

30. Partizan Tech's attempts to use the material support of Falcon to receive money from Customer 1 on an existing contract, M/86/437/31/AM, support violations of IEEPA and money laundering statutes. As such, any payments to Partizan Tech by a U.S. person or through the United States following its designation, even through Falcon, which was later designated for this involvement, is subject to forfeiture.

**B. Target Funds 2: Tehnoglobal's Reliance on Falcon Before 2019 Designation**

31. As mentioned above, Tehnoglobal (also referred to as TGS) is an arms trading company located or organized in Serbia that OFAC designated pursuant to Executive Order 13,818 in 2017. Following the designation, Tehnoglobal, like Partizan Tech, relied on Falcon to continue its business with clients, as described below.

a. On December 22, 2017, Tehnoglobal attempted to transfer a payment of €23,300.00 to a client. This transfer was unsuccessful as the relevant foreign bank notified Tehnoglobal that it could not process the wire due to the recent designation.

b. Tehnoglobal then contacted an individual named Marta Geleban ("Geleban") who worked for both Tehnoglobal and Falcon.

c. On or about January 25, 2018, Falcon sent €23,670.004[4] to this same client, seemingly on behalf of Tehnoglobal. The client then asked for confirmation that this payment should be attributed to Tehnoglobal, not Falcon.

d. Thereafter, on May 28, 2018, Geleban signed a letter to a client on Tehnoglobal letterhead, stating:

> Referring to our long-term cooperation hereby I would like to inform you that our company Tehnoglobal Systems doo on the basis of the decision of the company's owner will merge with Falcon Strategic Solutions doo Belgrade. That process will happen in June and our new company Falcon Strategic Solutions doo will proceed the cooperation with you as your supplier.

e. As described previously, Tehnoglobal was designated at this time, making any payment by a U.S. person or through the United States made by Falcon on Tehnoglobal's behalf a violation of sanctions against Tehnoglobal.

f. Geleban and Tehnoglobal continued to work with Falcon, stating in a September 7, 2018, email, revealed in search warrant returns, to a purported client, "the company TGS will stop doing import-export business and will be completely shut down by the end of the year. All the work done by TGS with the same associates is continued by Falcon Strategic solutions

---

4 This amount is slightly off from that in the initial unsuccessful transfer. This deviation could be a result of currency fluctuation, which would be consistent with a clause requiring payment amounts to track daily exchange rates, discovered in similar contracts in the search warrant returns.

doo, which is part of the corporation. Therefore, please send me a request for an offer to FALCON and I will forward the offer to you."

g. On or about November 29, 2018, Geleban sent an email to a Falcon email address and included both Tehnoglobal and Falcon in her signature block, indicating that she worked for both companies at the same time.

32. On or about October 16, 2018, Customer 2 attempted to wire a payment of $582,000.00 to Falcon through a U.S. Correspondent Bank. Just as with Target Funds 1, this payment was blocked and comprises Target Funds 2. Target Funds 2 remain blocked at U.S. Bank 2.

33. Tehnoglobal's attempts to use Falcon to receive money from its existing clients support violations of IEEPA and money laundering statutes. As such, any payments to Tehnoglobal by U.S. persons or through the United States following its designation, even through Falcon, which was later designated for this involvement, is subject to forfeiture.

## III. Target Funds 3 and 4: Finrost Limited as a Financial Intermediary for Designated Entities

34. Target Funds 3 and Target Funds 4 relate to another company, Finrost, which was designated by OFAC in 2019. As described further below, the Designated Entities relied on Finrost after their 2017 designation in order to continue their businesses. As further described below, Target Funds 3 and Target Funds 4 relate to transfers sent to Finrost, through U.S. banks, on their behalf.

35. On bank transactions discovered in search warrant returns, Finrost provided the same addresses as both Partizan Tech and Grawit Limited.

36. Search warrant returns also revealed that in January 2019, Grawit Limited directed another client to send the remaining value of their contract to Finrost.

37. Following this activity, OFAC designated Finrost, as well as Falcon, in 2019.

38. With this designation, OFAC linked Finrost with Falcon through their joint director, Esad Kapidzic ("Kapidzic"), and described Finrost as acting on behalf of and receiving money for a weapons contract for designated entities.

**A. Target Funds 3: Finrost as a Financial Intermediary for Transactions with Customer 3**

39. In 2018, the Designated Entities began relying on Finrost to receive U.S. dollar payments on their behalf, including from Customer 3.

40. Customer 3 was a client of Grawit Limited and Tehnoglobal before their 2017 OFAC designation. Indeed, bank records show that between November 2016 and December 2017, Customer 3 wired three payments in U.S. dollars to these companies, with the final payment to Grawit Limited just three days before the 2017 designation. Beginning in January 2018, soon after the 2017 designation, Customer 3 started wiring the payments to Finrost. Thereafter, there were over a dozen payments from Customer 3 to Finrost throughout 2018, sent using U.S. correspondent banks.

41. There were also communications discovered in search warrant returns between Customer 3 and Finrost, which specifically referenced Falcon. For example, on April 10, 2018, Finrost sent a Pro Forma Invoice, on Finrost letterhead, to Customer 3's CEO providing for a payment to Finrost on a contract in the amount of $210,000.00. Kapidzic, the individual designated in 2019 for being the director of both Finrost and Falcon, signed on behalf of Finrost. Soon after, on April 12, 2018, Finrost attached an updated invoice in the same amount that was signed by Kapidzic, but requested payment to Falcon, not Finrost. In that same communication, Finrost wrote, "Please be informed that we are change transport agreement and PF Invoice on our other company named FALCON STRATEGIC SOLUTIONS."

42. For Customer 3, the Designated Entities and their front companies were apparently interchangeable. For example, on August 16, 2018, Kapidzic, using a Finrost email account and letterhead, reached out to Customer 3's CEO again with a greeting for the holiday Eid Mubarak. Later that day, the CEO responded to the Finrost email, but stated, "Happy Eid to you, your family and all my friends at *Partizan*." To Customer 3, Finrost, Falcon, and Partizan Tech were seemingly all the same entity. The CEO communicated with the same person, Kapidzic, whether the CEO was sending wires to Finrost, Falcon, or Partizan Tech. The only difference was the name of the company.

43. The Designated Entities' attempts to transact with Customer 3 continued through the remainder of 2018 into 2019. On February 14, 2019, Partizan Tech sent this same CEO multiple Export of Arms and Military Equipment forms that were signed in February and June 2018. These forms listed Finrost, not Partizan Tech, as the buyer and Customer 3, as the Intermediary/consignee. As described above, Partizan Tech was designated at this time, making U.S. dollar payments sent to Finrost a violation of sanctions against Partizan Tech by the U.S. banks that were involved. These forms also included Vectura Trans as the exporter, and Customer 1 as the end user.

44. Target Funds 3 are traceable to payments made by Customer 3 to Finrost involving Grawit Limited. Specifically, Target Funds 3 consist of three payments totaling $3,886,973.41 sent by Customer 3 to Finrost between September and November 2018. The first wire transaction was for $1,506,484.31 and occurred on or about September 4, 2018. The second wire transaction was for $1,829,240.00 and occurred on or about September 20, 2018. The third wire transaction was for $551,249.10 and occurred on or about November 29, 2018. All three payments were blocked as they passed through a U.S. correspondent account and remain frozen at U.S. Bank 1.

45. The Designated Entities' efforts to use Finrost as a conduit for business with Customer 3, support violations of IEEPA and money laundering statutes. As such, any payments to Finrost as part of these laundering efforts, is subject to forfeiture.

**B. Target Funds 4: Partizan Tech's Arrangement with Finrost for Transactions With Customer 4**

46. Partizan Tech relied on specific arrangements with Finrost to transact with other customers, such as Customer 4. On or about December 23, 2017, an individual named Zelimer Petrovic ("Petrovic") emailed a contract between Partizan Tech and Customer 4 with the contract number DP3/2/50/1/2017/154.[5] In doing so, Petrovic circulated documents on Partizan Tech letterhead.

47. In March 2020, Petrovic continued to manage transactions with Customer 4, emailing multiple invoices between Partizan Tech and Customer 4, deemed to be "Unpaid deliveries." One of these invoices, labeled as Invoice number PT-GHQ.UAE/18, indicated that it was issued pursuant to the previously described contract DP3/2/50/1/2017/154. The invoice also listed the beneficiary as Finrost, not Partizan Tech, thereby indicating that Finrost was acting as an intermediary for payment to Partizan Tech on this contract. Given Partizan Tech's designation, making this U.S. dollar payment sent to Finrost was a violation of IEEPA.

48. Target Funds 4 is a wire for $15,179,860.00 from Customer 4 to Finrost on September 18, 2018, which was blocked while passing through a U.S. correspondent account. This wire was sent by Customer 4 based on communications involving Petrovic and Partizan Tech with Customer 3 stating that that the payment on a Partizan Tech contract should be made to Finrost, not Partizan Tech. Target Funds 4 remain frozen at U.S. Bank 2.

---

[5] OFAC designated Petrovic on December 9, 2019.

49. As described previously, Partizan Tech was designated at the time of the wire of Target Funds 4, making this U.S. dollar payment sent to Finrost a violation of IEEPA. As such, any payments to Finrost by U.S. persons or through the United States is subject to forfeiture herein.

## IV. <u>Target Funds 5: Vectura Trans As A Service Provider to Designated Entities</u>

50. Target Funds 5 relate to an additional company, Vectura Trans. Vectura Trans, run by Milan Subotic ("Subotic") provided services to Partizan Tech and other sanctioned individuals or entities until Vectura Trans was designated in 2019.

51. Subotic was open about his connection to Partizan Tech, even after that company's designation in 2017. Indeed, according to search warrant returns, on March 21, 2019, Subotic identified himself as the head of Partizan Tech's logistics department in his email signature block. In this same email, he further connected himself to other companies, attaching an End User Certificate, which listed the seller as Falcon, and the end user as Customer 4. This End User Certificate was dated July 31, 2018.

52. Search warrant returns also show that Subotic used Ventura Trans to provide services for Partizan Tech and the other Designated Entities. Specifically, on December 10, 2018, a potential business associate notified Vectura Trans that it could not operate a flight for Vectura Trans because the shippers involved in the flight, Partizan Tech and Tehnoglobal, were on the OFAC SDN list. In response, the following day, Subotic acknowledged that the two companies were designated, but told the business associate he could still provide the flight services because the transaction had nothing to do with military goods and because the designation was inapplicable to business outside the United States.

53. On December 13, 2018, this potential client responded, disagreeing with Subotic and informing him:

> Wherever a company has operations that "touches" the United States (and this includes trading in USD and operating US Equipment – such as your Boeings) it must comply with the United States (US) OFAC regime and additionally and in all cases, not to conduct business with Specially Designated Nationals (SDNs) under the US OFAC regime.

54. Despite this customer rejection, Subotic continued to do business through Vectura Trans to provide services to Partizan Tech and other designated companies in 2019. On February 14, 2019, a Partizan Tech email account sent the CEO of Customer 3 (the same CEO who transacted with Finrost and Grawit Limited) an export document that listed Vectura Trans as the Exporter, Finrost as the Buyer, Customer 3 as the Intermediary/consignee, and Customer 1 as the End User.

55. Thereafter, Customer 3 sent Vectura Trans a wire in the amount of $4,549,719.80 on February 26, 2019. This wire was blocked while passing through a U.S. correspondent account and makes up Target Funds 5. These funds remain blocked at U.S. Bank 1.

56. Notably, based on the timing of the February 14, 2019 email, the listed parties to the attached export document, and the subsequent wire from Customer 3 comprising Target Funds 5, it is likely that the frozen funds and document listing multiple, aforementioned companies, are linked. Regardless, Target Funds **5** represent attempts, once again, to circumvent sanctions against Partizan Tech, following its designation, in violation of IEEPA and money laundering statutes, and are such subject to forfeiture.

**COUNT ONE – FORFEITURE**
**(18 U.S.C. § 981(A)(1)(A))**

57. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 56 above as if fully set forth herein.

58. Falcon Strategic Solutions, Finrost Limited, Vectura Trans, and others, known and unknown, acted individually and conspired to transport, transmit, or transfer the $33,980,453.21

in Defendant Funds, to wit, Target Funds 1 through 5, to place inside the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of IEEPA, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(A).

59. As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transaction in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(A), or as any property traceable to such property.

**COUNT TWO – FORFEITURE**
**(18 U.S.C. § 981(A)(1)(C))**

60. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 56 above as if fully set forth herein.

61. Falcon Strategic Solutions, Finrost Limited, Vectura Trans, and others, known and unknown, acted individually and conspired to conduct transactions involving the sale of goods in U.S. dollars, specifically, the attempted transmission of Target Funds 1 through 5 for the purposes of payment to sanctioned entities, in violation of IEEPA, Title 50, United States Code, Section 1705; and the conspiracy statute, Title 18, United States Code, Section 371.

62. As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as property, real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to violate 50 U.S.C. § 1705.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue to the defendant properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: April 4, 2022
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By: */s/ Derek S. Hammond*
DEREK S. HAMMOND,
D.C. Bar # 1017784
CHRISTOPHER TORTORICE,
D.C. Bar # 24048912
Assistant United States Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-2511
Derek.Hammond@usdoj.gov

*Attorneys for the United States of America*

**VERIFICATION**

I, Rory Marquette, a Special Agent with Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture In Rem is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed this 4th day of April 2022.

______________________________
Rory Marquette
Special Agent
Homeland Security Investigations